MOREL et al. v. STEARNS et al.

(Supreme Court, Appellate Term. May 19, 1904.)

1. SALES—DELIVERY—TENDER—SUFFICIENCY.
    Tender of goods on June 1st is not a delivery, within the terms of a contract providing for delivery in May, in the absence of proof that delivery was prevented by some act or omission on the part of the buyer.

2. SAME—ARRIVAL IN PORT.
    The mere arrival of goods at a wharf within the limits of a city, where delivery was to be made at a place therein to be designated by the buyers, does not constitute a delivery to the buyers, where they had designated a different place of delivery.

Appeal from City Court of New York, Trial Term.

Action by Marie J. E. Morel and others against John N. Stearns and others. From a judgment for plaintiffs, and from an order denying a motion for a new trial, defendants appeal. Reversed.

See 84 N. Y. Supp. 521; 75 N. Y. Supp. 1082.

Argued before FREEDMAN, P. J., and TRUAX and SCOTT, JJ.

Hitchings & Palliser, for appellants.
Norwood & Dilley, for respondents.

SCOTT, J. This action arises out of the alleged failure of plaintiffs to deliver six bales of silk to defendants within the time specified in the contract between the parties. Plaintiffs are residents of France. Defendants are manufacturers having a place of business in the city of New York, and factories at Petersburg, Va., Williamsport, Pa., and Elmira, N. Y. The plaintiffs were represented in New York by the firm of Jardine, Matheson & Co., as their agents. The contract, which was in writing, was made in the city of New York, and provided for the sale of a quantity of Italian silk, "deliverable April & May 1900." The contract was entirely silent as to the place and method of delivery. The silk came to this country packed in bales, and all of it, except so much as was comprised in the six bales in controversy, duly arrived, and was delivered and accepted. The shipments, prior to this one, had been made in small lots, and the practice had grown up between the parties that, when plaintiffs' agents received the shipping documents, they notified defendants of their receipt, and asked for shipping instructions "so that we can deliver on arrival," and in each previous instance defendants

had responded by directing that the bales be shipped to one of defendants' factories by the Old Dominion Steamship Line. Plaintiffs' agents would thereupon, at their own expense, and by truckmen of their own selection, deliver the bales to the steamship company in the city of New York. As all of these deliveries were well within the time fixed by the contract, the particular question involved in this action did not arise. It seems to be conceded by both parties, and is undoubtedly true, as a matter of law, that the contract was one calling for strict fulfillment as to the time of delivery, and that the defendants were justified in refusing to accept delivery after May, 1900, unless they had, by some act or omission, prevented the delivery within the time specified. On the first appeal to this court (75 N. Y. Supp. 1082) a judgment in favor of defendants, entered upon the direction of a verdict, was reversed because it did not sufficiently appear from the evidence that defendants had not rendered strict delivery impossible by delay in answering the request of plaintiffs' agents for the designation of a place of delivery. Upon the next trial a verdict was directed in favor of plaintiffs, and the judgment entered thereon was reversed (84 N. Y. Supp. 521) because the court had undertaken to decide questions of fact which should have been left to the jury. Upon the record now presented, there is really no controverted question of fact.

Before considering the circumstances attending the attempted delivery of the goods in controversy, it will be useful to consider the situation of the parties, and their respective rights and obligations. As has been said, the contract called for delivery during April and May. The market price of silk had materially declined since the contract was made, and it was therefore to plaintiffs' interest to make delivery, and to defendants' interest that delivery should not be made. If the six bales should be tendered before the end of May, defendants would be bound to receive them, but they were under no moral or legal obligation to accept a tender of delivery after the end of that month. The goods were of a portable character, easily handled, and, in the absence of any designation in the contract as to the place of delivery, it was plaintiffs' duty to make such delivery at the defendants' place of business in the city of New York, or at such other place, not less accessible, as defendants might designate. La Farge v. Rickert, 5 Wend. 189, 21 Am. Dec. 209. The mere arrival of the goods at a wharf within the limits of the port of New York certainly did not constitute delivery to defendants. The course of business between the parties respecting prior shipments is chiefly significant as evidencing a recognition by plaintiffs' agents that their duty to make delivery was not fully performed when the goods arrived in port, but that it still remained incumbent upon them to make an actual, physical delivery at some place designated by defendants. This was no concession on their part, but merely an acquiescence in the obligation cast upon them by the law. The last six bales, over which this controversy has arisen, were shipped from Genoa, Italy, on May 17th, by the steamship Trave, which arrived at her dock at Hoboken, N. J., on May 29th. The invoice appears, by a stamp upon it, to have been received by Jardine, Matheson & Co., plaintiffs' agents, on May 28th. On the following day, May 29th, at 6:55 o'clock in the evening, the latter firm mailed a letter to defendants, advising them of the re-

ceipt of the documents for the six bales of silk, and asking shipping instructions, stating that the bales were on the steamship Trave, "due today or to-morrow" (May 29th or 30th). May 30th, known as "Decoration Day," was at that time, by law, a dies non only so far as concerned the maturity of negotiable paper, and the transaction of business in the public offices of the state and county. It was, however, generally observed as a holiday by business houses, and partially observed by the post office, which undertook to make but one delivery on that day. The places of business both of Jardine, Matheson & Co. and of defendants were closed, as well as the offices of the steamship company, and the ship was unable to make her entry at the customhouse until May 31st; no deliveries of cargo being made until after such entry. In consequence of the observance of May 30th as a holiday, defendants did not receive the notification from Jardine, Matheson & Co. until 9 or half past 9 o'clock on the morning of May 31st, the last day allowed by the contract for the delivery of the silk. They at once replied, sending by a special messenger a notification that they wished the silk delivered on that day at their warehouse on Greene street, in this city. Some hours afterwards, Jardine, Matheson & Co. employed a public truckman, and instructed him to get the goods from the ship and deliver them to defendants. In anticipation of a possible delivery, defendants kept their warehouse open later than usual; but no tender of delivery was made until June 1st, when defendants refused to receive the goods on the specific ground that the time for delivery under the contract had expired. Clearly the plaintiffs were in default, and it is equally clear that they were placed in default by no act or omission to act on the part of defendants. It was the defendants' right to demand delivery at their warehouse, and the fact that they had directed prior deliveries to be made at the dock of the Old Dominion Steamship Company did not bind them to receive this particular silk at the same place. Even if it had so bound them, there is nothing to show that the change in the place of delivery affected in any way the time of delivery. The same causes which prevented delivery at defendants' warehouse on May 31st would have equally prevented delivery at the Old Dominion Dock, and these causes were not of defendants' making. Nor are the defendants chargeable with having caused the delay because they failed to keep their office open on May 30th, so as to receive the letter of Jardine, Matheson & Co. on that day. Nothing would have been gained if they had kept open and had received the letter. The office of Jardine, Matheson & Co. was also closed, so that no reply could be given to them. The ship had not entered at the customhouse, and no deliveries were made on May 30th. On the other hand, it is not easy to acquit plaintiffs' agents of negligence. They must have known the terms of the contract, the fall in the price of silk, and the consequent importance of strictly performing the contract; and they must have been aware of the general observance of Decoration Day as a holiday, because they closed their own office on that day. If they received the invoice on May 28th, why did they delay notifying the defendants until late in the afternoon of May 29th? And after they had received delivery instructions early on the morning of May 31st, why did they delay several hours in sending a truckman for the goods? To these questions no

satisfactory answer is found in the case. But it is unimportant whether plaintiffs or their agents were negligent or not. The fact is that they did not make delivery within the time specified in the contract, and the only question is whether their failure so to deliver was due to any act or omission to act on the part of defendants. It is clear that it was not. On the contrary, the defendants acted with all proper and reasonable promptitude. It follows that defendants' motion to dismiss the complaint should have been granted, and, because it was not, the judgment must be reversed and a new trial granted, with costs to appellants to abide the event.

Judgment reversed and a new trial granted, with costs to appellants to abide the event. All concur.